## THE CITY OF MACON.

## THE EVA WALL.

### (Circuit Court of Appeals, Third Circuit. January 13, 1899.)

### No. 28.

COLLISION—VESSELS MEETING—UNWARRANTED CHANGE OF COURSE.
   Where two meeting vessels, by keeping their courses, would pass to the left of each other in safety, one of them, which insists on the naked right of passing to the right, and changes her course when it is attended with danger, is in fault for a collision which results.[1]

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

This was an action by William A. McLean, master of the schooner William Jones and the tug Eva Wall, against the steamer City of Macon, to recover damages for collision. There was a decree for libelants (85 Fed. 236), and the respondent appeals.

Horace L. Cheyney, for appellant.
Edward F. Pugh, for appellee the William Jones.
Henry R. Edmunds, for appellee the Eva Wall.

Before ACHESON and DALLAS, Circuit Judges, and KIRKPATRICK, District Judge.

KIRKPATRICK, District Judge. This action was originally brought on to determine the liability for a collision in the Delaware river between the steamship City of Macon and the schooner William Jones, loading with coal, in tow of the tug Eva Wall. It is admitted that the schooner was faultless, and therefore the only question presented relates to the responsibility for the damage caused to her by the collision. The record shows that the schooner William Jones, in tow of the tug Eva Wall, was hauled out of the Greenwich piers on a hawser of ordinary length. There were several vessels anchored on the anchorage grounds just below the piers, and for the purpose of avoiding them as well as several small craft which were on the westward side of the river, the tow took a course first down, and then diagonally across, the river towards the eastern or Jersey shore. The tug was justified in taking this course, for the eastern side of the channel was comparatively clear. After the tow had passed under the bow of the Buchanan, one of the anchored vessels, and had nearly straightened out on her course down the river, the steamship City of Macon was sighted coming up the river, and to the westward of the course then held by the tug. A careful examination of the record leaves no doubt upon our minds that if the City of Macon and the tow had each continued upon their respective courses as laid down when they first sighted each other that there would not have been any collision. The testimony of the witnesses on that point seems conclusive. There was not any need of change.

---

[1] For signification of signals of meeting vessels, see note to The New York, 30 C. C. A. 630.

Both boats had plenty of room and plenty of water, and all that was necessary to avoid a collision was for each to keep its course. If a change of course had been necessary to avoid collision, then the rule required that the boats should pass to the right; but if to do so was not only to risk collision, but to render collision inevitable, we cannot resist the conclusion that this insistence upon a naked right attended with danger was a fault. The steamship was bound to avoid the risk of collision. The choice was open to her either to proceed in safety or incur the risk of changing her course. She chose the latter, and must be held answerable for the consequences. The Lucy, 20 C. C. A. 660, 74 Fed. 574. We find from the record that the City of Macon was also at fault in changing her course at the time she is admitted to have done so. While there is some contradiction in the testimony, in our opinion the weight of the evidence is overwhelmingly in favor of the contention of the tow that the Eva Wall first blew two whistles, showing her intention of keeping to the eastward, and that these signals were answered by the City of Macon with two whistles, signifying her acquiescence in the arrangement; that afterwards, and when it was too late for the Eva Wall to change her course, the City of Macon blew one whistle, and put her helm hard a-port. Again, the Eva Wall blew two whistles, but the City of Macon persisted in repeating one whistle, and continuing in her changed course, which resulted in the collision, and the sinking of the schooner William Jones upon the very easterly edge of the channel. For this the Eva Wall was in no way at fault. If the signals originally exchanged had been followed, no collision would have resulted. That the subsequent change of the city of Macon's course was the cause of the collision is made plain by the testimony of Capt. Keen, who was called as a witness on behalf of the steamship. He was on his barge, anchored near the channel, when the steamship passed by. He saw her course, as well as that of the tow. In his opinion, they would have passed in safety had each held her course. His attention was first attracted to the steamship when he heard the order of the captain, "Give her one whistle, and put your helm hard a-port." He heard the tug answer with two whistles, and the City of Macon rejoin with one whistle. To his companion he remarked, "He sticks to his one whistle," and in his testimony adds, "Being steamboat men, we knew what the result might be." It was as they expected. We cannot find any explanation satisfactory to us for this change of purpose on the part of the City of Macon. We are unwilling to believe that it was adopted with an intention to produce a collision, yet that was the result that a disinterested, friendly, and skillful onlooker anticipated. It is no part of the court's duty in cases of this character to find reasons for the conduct of men. We know that great chances are taken by those eager in the assertion and stubborn in the enforcement of supposed rights. On the whole case we conclude that the City of Macon was alone at fault, and are of the opinion that the decree of the district court should be affirmed.